UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BASKIN-ROBBINS USA, CO., <br> a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SCOTTIE D. CHO, <br> a New Jersey resident, and <br> MEE SOOK CHO, <br> a New Jersey resident, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  C.A. No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**Parties**

1.      Plaintiff Baskin-Robbins USA, Co. is a California corporation with its principal place of business at 14 Pacella Park Drive, Randolph, Massachusetts ("Baskin-Robbins"). Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States.  Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.      Defendant Scottie D. Cho is a natural person and a citizen and resident of the State of New Jersey.  At all times relevant to this action, Scottie D. Cho was an owner and operator of a retail ice cream store located at 781 West Sproul Road, Springfield, Pennsylvania

(the "Defendants' Store"). Defendant Scottie D. Cho is a Baskin-Robbins franchisee for Defendants' Store pursuant to a Franchise Agreement dated May 11, 2001 (the "Franchise Agreement"). Defendant Scottie D. Cho is licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

3. Defendant Mee Sook Cho is a natural person and a citizen and resident of the State of New Jersey. At all times relevant to this action, Mee Sook Cho was an owner and operator of the Defendants' Store. Defendant Mee Sook Cho is a Baskin-Robbins franchisee for Defendants' Store pursuant to the Franchise Agreement. Defendant Mee Sook Cho is licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

### Jurisdiction and Venue

4. This Court has jurisdiction pursuant to 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### Background Facts

6. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

7. Baskin-Robbins Incorporated is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores and the ice cream and other products associated with those stores.

8. Plaintiff Baskin-Robbins USA, Co. has been licensed by Baskin-Robbins Incorporated to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchise is located. Plaintiff is authorized to use Baskin-Robbins Incorporated's trademarks, service marks and trade names and to sub-license Baskin-Robbins franchisees to use these marks and trade names.

9. Baskin-Robbins Incorporated owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

10. The Baskin-Robbins trademarks are utilized in interstate commerce.

11. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

12. Baskin-Robbins and its franchisees currently operate approximately 2,300 stores in the United States and 2,200 stores outside of the United States. In the almost fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

13. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

14. The goodwill and reputation associated with the Baskin-Robbins marks are impaired or are subject to being impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Baskin-Robbins trademarks.

### The Defendants' Use of Baskin-Robbins' Marks

15. The Defendants are licensed to use the Baskin-Robbins trade names and trademarks in accordance with the terms of the Franchise Agreement.

16. Baskin-Robbins provides each of its franchisees manuals, guides, and plans (collectively referred to hereinafter as the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a Baskin-Robbins store. These documents include:

    a. The Store Operations and Management Guide, which includes detailed sections on Dress Standards (Chapter 205.1), Cleanliness and Store Appearance (Chapters 300.1-303.1), Ice Cream Product Handling (Chapter 604.1), Yogurt Product Handling (Chapter 609.1), Product Preparation (Chapters 700.1-704.1), Sanitation and Maintenance (Chapters 1100.1-1108.1), and Safety (Chapter 1207.1);

    b. The Rules of Operation of a Baskin-Robbins Store; and

    c. The Retail Food Safety System Manual.

17. Taken together, the Manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

18. The Franchise Agreement executed by the Defendants contains acknowledgments and agreements by the Defendants concerning the importance of maintaining Baskin-Robbins'

standards for health, sanitation, and safety. For example, the applicable paragraphs of the Franchise Agreement include:

      a.    Section 5.0: "FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons. FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole."

      b.    Section 5.0.2: "FRANCHISEE agrees to operate the Unit in strict accordance with all of FRANCHISOR's Standards as they may be communicated to FRANCHISEE from time to time. Standards shall be established for and distributed to franchisees generally and/or FRANCHISEE specifically, in such form and content as FRANCHISOR may from time to time in its sole discretion prescribe."

      c.    Section 5.1.1: "FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR. All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand. FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's

operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time."

    d. Section 5.1.6: "FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.  FRANCHISEE shall make no material alteration, addition, replacement or improvement in or to the interior or exterior of the Unit (including the parking lot and landscaped areas) without FRANCHISOR's prior written consent."

  19. The applicable paragraphs of Schedule "BR" of the Franchise Agreement entitled "Special Terms and Conditions Applicable to a Baskin-Robbins Franchise" include:

    Section 5.0: "FRANCHISEE understands and acknowledges that every detail of the Baskin-Robbins System is important to BASKIN-ROBBINS, to FRANCHISEE and to other Baskin-Robbins franchisees, in order to maintain high and uniform standards of quality, cleanliness, appearance, service, products and procedures and thereby increase the demand for Baskin-Robbins Products and protect and enhance the reputation and goodwill of BASKIN-ROBBINS."

  20. Pursuant to the Franchise Agreement (Section 9.0.5), Defendants agreed that a failure to maintain standards constitutes a default under the Agreement.

  21. Pursuant to the Franchise Agreement (Section 9.3), Defendants agreed to pay to Baskin-Robbins all costs and expenses, including attorneys' fees, incurred by Baskin-Robbins as a result of Defendants' breach of the Franchise Agreement.

22. On May 22, 2002, Defendants' Store was inspected by a Baskin-Robbins representative. Defendants' Store was identified as containing numerous standards violations relating to health, sanitation, and safety which were damaging to Baskin-Robbins' reputation and goodwill.

23. On May 22, 2002, Baskin-Robbins delivered to Defendants a notice to cure listing the standards violations at Defendants' Store and requesting that these deficiencies be cured immediately.

24. On May 24, 2002, the Baskin-Robbins representative reinspected Defendants' Store. Numerous standards violations remained uncured.

25. Despite the fact that Baskin-Robbins has brought standards violations to the attention of Defendants, they have failed to cure these violations and to bring Defendants' Store into conformity with the required standards.

26. Defendants' actions have caused and continue to cause irreparable harm to Baskin-Robbins, including harm to Baskin-Robbins' reputation and goodwill. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

## COUNT I
### (Breach of Contract)

27. The allegations of paragraphs 1 through 26 are hereby incorporated by reference.

28. The failure of Defendants to maintain their Store and to conduct business in a manner which conforms to the standards established by Baskin-Robbins in the Franchise Agreement and the Manuals constitutes a breach of contractual obligations and agreements undertaken by Defendants in the Franchise Agreement.

29.     These breaches of the Franchise Agreement have caused and will continue to cause irreparable injury to the reputation and goodwill associated with the trademarks, trade names, and trade dress of Baskin-Robbins and its other franchisees.

30.     As a direct and proximate result of these breaches, Baskin-Robbins has incurred substantial losses, fees, and expenses.

## COUNT II
### (Trademark Infringement)

31.     The allegations of paragraphs 1 through 30 are hereby incorporated by reference.

32.     The Defendants' use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of the Franchise Agreement and without the consent of Baskin-Robbins is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.  Such continued use of the Baskin-Robbins trademarks and trade names infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

33.     As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Unfair Competition)

34. The allegations of paragraphs 1 through 33 are hereby incorporated by reference.

35. The Defendants' use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of the Franchise Agreement and without the consent of Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Baskin-Robbins trademarks and trade names violates 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

36. As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Trademark Dilution)

37. The allegations of paragraphs 1 through 36 are hereby incorporated by reference.

38. The Defendants' commercial use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of the Franchise Agreement and without the consent of Baskin-Robbins causes dilution of the distinctive quality of the Baskin-Robbins trademarks and trade names. Such unauthorized use of the Baskin-Robbins trademarks and trade names violates 43 of the Lanham Act, 15 U.S.C. § 1125(c) and applicable state law.

39. As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**Prayer for Relief**

WHEREFORE, Baskin-Robbins prays that this Court:

a. Enjoin Defendants to cease violating at Defendants' Store Baskin-Robbins' standards for health, sanitation, and safety as identified on the Critical Food Safety and Sanitation Inspection form dated May 22, 2002, and the Store Standards Inspection form dated May 24, 2002, within five (5) days of the date of the Court's Order;

b. Enjoin the Defendants and all those acting in concert with them from infringing upon the Baskin-Robbins trademarks and trade name, from diluting the Baskin-Robbins trademarks and trade name, and from otherwise engaging in unfair competition with Baskin-Robbins;

c. Award Baskin-Robbins judgment against Defendants for any damages Baskin-Robbins has incurred as a result of Defendants' actions, including its costs and attorneys' fees incurred in connection with this action; and

d. Award Baskin-Robbins such other relief as this Court may deem just and proper.

Respectfully submitted,

_____
Craig R. Tractenberg
BUCHANAN INGERSOLL
PROFESSIONAL CORPORATION
(Incorporated in Pennsylvania)
11 Penn Center, 14th Floor
1835 Market Street
Philadelphia, PA  19103
Tel. (215) 665-3866
Fax  (215) 665-8760

                    Robert L. Zisk
                    David E. Worthen
                    Tristan B. L. Siegel
                    SCHMELTZER, APTAKER & SHEPARD, P.C.
                    2600 Virginia Avenue, N.W.
                    Suite 1000
                    Washington, D.C. 20037
                    (202) 333-8800

                    Attorneys for Plaintiff
                    Baskin-Robbins USA, Co.

Dated:  June ____, 2002